IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MERL M. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:12cv871-CSC |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. alleging that he was unable to work because of a disability. He seeks benefits for a closed period from his alleged onset date of June 1, 2001 until his last insured date of June 30, 2004. (R. 42). His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3). Pursuant

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance; it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A. Introduction**. The plaintiff was 61 years old on the date he applied for disability benefits. (R. 160). His prior work experience includes work as a building contractor and

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

county commissioner.[4]  (R. 51).  The plaintiff alleges that he became disabled on June 1, 2004, based back and heart problems.  Following the hearing, the ALJ concluded that while the plaintiff had medically determinable impairments of fatigue and angina during the period prior to the date he was last insured, June 30, 2004, these impairments were not severe impairments that significantly limited his ability to perform work. (R. 22-23).  Consequently, the ALJ concluded that the plaintiff was not disabled during the insured period.  (R. 35).

**B. Plaintiff's Claims**.  As stated by the plaintiff, he presents three issues for the Court's review.

1. Whether the ALJ erred in finding that prior to his date last insured, the claimant did not have a severe impairment or combination of impairments.

2. Whether the ALJ erred in failing to give the opinions of the claimant's treating physicians controlling weight under the "treating physician rule," or at least significant weight as a retrospective diagnosis.

3. Whether the ALJ erred in determining that the claimant could have performed his past work as a county commissioner during the relevant period.

## DISCUSSION

**1.  Sequential evaluation beyond step 2**

The plaintiff argues that the ALJ failed to pursue the sequential evaluation beyond step 2 of the analysis.  The ALJ stopped the evaluation at step 2 because the ALJ did not find

---

[4] The record also indicates that the plaintiff did some work as a picture framer.  (R. 43-44).

the plaintiff had any severe impairments that significantly interfered with the plaintiff's ability to perform work during the closed period from June 1, 2001 until the last insured date of June 30, 2004. The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected." *McDaniel*, 800 F.2d at 1031. Indeed, a severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154 fn. 12 (1987) citing with approval Social Security Ruling 85-28 at 37a.

A physical impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(c). The plaintiff has the "burden of showing [his] impairment is "severe" within the meaning of the Act." *McDaniel,* 800 F.2d at 1030. "Unless the claimant can prove, as early as step two, that []he is suffering from a severe impairment, []he will be denied disability benefits." *Id*, at 1031.

The plaintiff argues that the ALJ failed to properly consider his fatigue, weakness and pain because, based on retrospective reports, these impairments were "present to such an extent as to be virtually incapacitating." (Doc. # 13 at 12). In finding that the plaintiff's fatigue, back and heart problems were not "severe impairments" during the insured period, the ALJ reviewed the plaintiff's medical records for the period in question. After carefully reviewing the medical records, the court concludes that substantial evidence supports the

ALJ's conclusion. Brown applied for disability income benefits on August 26, 2008, alleging disability based on back problems. (R. 160, 179). In his functional report, Brown indicated that he walked the dog, picked up the mail, watched television, continued to drive into town, and did light housework including taking out the trash. (R. 188-191). He also attended church on a weekly basis and attended his grandchildren's activities. (R. 192). Brown's medication list indicates that his medications were prescribed after March, 2008. (R. 215-16). According to Brown, his condition changed to constant pain in November 2008. (R. 207).

It is undisputed that Brown's insured period expired on June 30, 2004. The court has scoured Brown's medical records and found only minimal treatment prior to June 30, 2004. Beginning in 1995, Brown presented to the Wedowee Hospital on occasion for blood work. (R. 450, 447, 444, 442, 438). On October 20, 2001, Brown complained of pain in the right upper quadrant of his abdomen. (R. 434, 378). An X-ray revealed a normal heart size, clear lungs, and "some minor degenerative changes of the lumbar spine and SI joints." (R. 437).

In April 2004, although Brown complained to his physician that he was fatigued, weak and tired, his doctor noted that Brown was "doing pretty well." (R. 374). Brown presented to his treating physician five times between April 29, 2004 and October 27, 2004. (R. 428, 373-74). He did not complain of back pain during any of those visits. On November 11, 2004, Brown presented to his physician complaining of fatigue. (R. 373). The treatment note reads: "Fatigue. Just a simple fact of too much work and not enough rest." (*Id.*)

On November 16, 2004, Brown had a stress test which revealed "underlying ischemic

disease." (R. 242, 231). On November 24, 2004, over four months after Brown's insured status expired, he underwent a heart catheterization and had two stents implanted. (R. 262-63). At that time, the surgery was considered successful. (*Id.*) On December 1, 2004, Brown was doing well. (R. 371).

On June 25, 2005, an x-ray of his chest demonstrated that Brown's heart was normal, and "osseous structures show considerable change in lumbar spine." (R. 421). Nonetheless, on July 7, 2005, when Brown presented to his treating physician complaining of his fingers and toes turning red and itching when exposed to cold, he "denied significant joint pain at present." (R. 412-15). He also had no chest pain or shortness of breath. (*Id.*) Brown was diagnosed with Raynaud's phenomenon. (*Id.*)

On August 25, 2005, Brown complained of lower back and hip pain but reported that he was working full time. (R. 221-24).

On January 10, 2006, Brown underwent another stress test which showed "[n]ormal left ventricular response to exercise giving this patient a low probability of functionally significant coronary disease." (R. 227). An x-ray on December 21, 2006, revealed "marginal spondylosis of the dorsal spine." (R. 398).

It was not until April 2008, almost 4 years after his insured status expired, that Brown was diagnosed with multilevel degenerative disc changes in his back. (R. 381-82, 269, 285). While the record indicates that the plaintiff underwent a heart catheterization in November 2004, the medical evidence in the record does not suggest that Brown's heart condition or his back problems had more than a minimal effect on his ability to perform basic work

activity prior to the expiration of his insured status on June 30, 2004. In fact, the record suggests that Brown worked full time after his insured status expired.

Brown has failed to demonstrate that he was unable to work during the closed period. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). Brown fails to point the court to any evidence in the record which shows that his fatigue, back or heart problems in any way compromised his ability to do work prior to June 30, 2004. Brown has the obligation, in the first instance, to demonstrate that he can no longer perform his past relevant work, and he is entitled to benefits. *See Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990) (the claimant bears the burden of establishing the existence of a disability). "Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits." *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)). *See also Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988). Consequently, the court concludes that Brown has failed to meet his burden of establishing that the ALJ's decision regarding the severity of his impairments was not supported by substantial evidence.

### 2.    Proper weight to the opinions of the plaintiff's treating physicians

The plaintiff complains that the ALJ failed to properly credit the retrospective opinions of his treating physicians, Dr. Robinson and Dr. Talbert. The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless

good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

In addition, "[a] physician's retrospective diagnosis is a medical opinion of the claimant's impairments which relates back to the covered period." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1988). However, a retrospective diagnosis is not entitled to deference "unless corroborated by contemporaneous medical evidence of a disabling condition" during the insured period. *Mason v. Comm'r of Soc. Sec.*, 430 Fed. Appx. 830, 832 (11th Cir. 2011) *quoting Estok*, 152 F.3d at 640 (collecting cases).

> Where the medical record contains a retrospective diagnosis, that is, a physician's post-insured-date opinion that the claimant suffered a disabling condition prior to the insured dates, we affirm *only* when that opinion was consistent with pre-insured-date medical evidence.

*Mason*, 430 Fed. Appx. at 832 (emphasis added). Finally, "[w]here a treating physician expresses uncertainty as to his own medical findings, the ALJ has no obligation to defer to his opinion." *Id.*

9

On July 28, 2009, Dr. Robinson opined that Brown "has been totally disabled at least since the middle of 2004 and probably incapable since 1999." (R. 350). On July 22, 2009, Dr. Talbert opined that Brown "has had this back pain problem for a prolonged period of time." (R. 454).

> You asked if his pain would have been disabling before June 2004. With the degree of changes that the patient has on x-rays and 2005, it is likely that he would have had back problems in June of 2004. I had not treated the patient during that time frame nor do I have records of treatment during that time frame. If the patient were to tell me that he had significant back pain problems in 2004, I would have no problem in believing him.

(*Id.*)

In this case, neither Dr. Robinson nor Dr. Talbert's conclusions are supported by the medical records. As previously noted, the only complaints of pain during the insured period occurred on October 20, 2001 when Brown complained of abdominal pain. (R. 434, 378). An x-ray on that date notes only "minor degenerative changes in the lumbar spine." (R. 437). The medical records reveal *no* complaints of back pain from 1993 until August 23, 2005.[5] (R. 221-224). Even though Brown complained of lower back and hip pain, he also indicated that he was working full time. (*Id.*) An x-ray in December 2006 revealed "marginal spondylosis of the dorsal spine." (R. 398). It was not until **April 3, 2008,** long after his insured status had expired, that Brown was diagnosed with congenital spinal stenosis of the

---

[5] Notwithstanding Brown's heart catheterization in November, 2004, the medical records detailing this procedure indicate that the placement of the stents was successful, and the physician anticipated that Brown's symptoms would improve. (R. 262-63).
  In January 2006, another stress test indicated that, at that time, there was a low probability of Brown suffering from "functionally significant coronary disease." (R. 227).

lumbar spine and multilevel degenerative disc changes.  (R. 381-83, 269, 285).

Finally, on July 23, 2009, Dr. Talbert referred Brown to ACT Physical Therapy for a functional capacity evaluation which concluded that Brown could perform light work.  (R. 346-349).  Clearly, the functional capacity evaluation contradicts the opinions of Dr. Talbert and Dr. Robinson that Brown was disabled and unable to work in June 2004.  The court has combed the record and has not found a single notation from either physician, or any other doctor, indicating that Brown could not or should not return to work during the insured period.

According to the plaintiff, "[a]lthough Dr. Talbert had not treated the claimant then, and had no records of treatment, then, the ALJ was still required to consider his retrospective opinion and give it great weight."  (Doc. # 13 at 13).  The plaintiff is simply wrong.  First, while the ALJ considered Dr. Talbert's opinion, (R. 27), the ALJ was not required to defer to that opinion because (1) Dr. Talbert expressed uncertainty about Brown's condition in 2004 and (2) the medical evidence does not corroborate Dr. Talbert's opinion.  *See Mason*, 430 Fed. Appx. at 832.

The ALJ also considered the opinion of Brown's treating physician, Dr. Robinson, but then discounted that opinion as inconsistent with the medical record.

> I do note Dr. Robinson's statements of disability and resultant limitations.  He even stated that claimant had fatigue, weakness and pain from his back.  However, his assessments are totally inconsistent with treatment records or the lack thereof, for the period in question.  For example, in 2001, he was treated for abdominal pain, but x-rays showed no evidence of acute abdominal or interthoracic process.  There was no treatment of again (sic) until 2½ years later on April 24, 2004.  Even though he reported weakness, fatigue, and

tiredness, he was described as doing well overall. There is no evidence of back pain and back pain attributed to his fatigue and/or other symptoms. There was also no x-rays ordered or a referral to a specialist. In fact, as previously noted, in November 2004, while Dr. Robinson opined that the claimant was totally disabled and unable to perform any work at this time, his treatment notes indicate that the claimant was actually working as he stated, "Just a simple fact of too much work and not enough rest, I believe." Dr. Robinson indicated that his fatigue was result of him working too much and the back pain was not addressed at all. Dr. Robinson also indicated that the claimant had age appropriate range motion in his examination of his extremities. Thus, based on the aforementioned and the lack of other objective evidence, Dr. Robinsons' (sic) assessment of the claimant's limitations prior to his date last insured cannot be accepted as credible.

In sum, there is no evidence of him treating the claimant for back pain prior to his date last insured. It was not until July 28, 2009, Dr. Robinson stated that the claimant had fatigue, weakness and pain from his back.

(R. 33-34).

The ALJ may disregard the opinion of a physician, provided that she states with particularity reasons she is discounting the opinion. *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987). Only after considering all the medical records, did the ALJ discount Dr. Robinson's opinion as inconsistent with his own treatment notes. Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected Dr. Robinson's July 28, 2009 and Dr. Talbert's July 22, 2009 retrospective opinions that Brown was unable to work in June 2004. After conducting an independent review of the record, the court concludes that the ALJ's determination that the plaintiff is not disabled is supported by substantial evidence.[6]

---

[6] Because the court concludes that the ALJ did not err in concluding at step 2 of the sequential evaluation that the plaintiff is not disabled, the court pretermits discussion of the plaintiff's argument regarding his ability to return to his past relevant work as a county commissioner.

**CONCLUSION**

Accordingly, the court concludes that the plaintiff failed to prove that his impairments were "severe" during the insured period. The decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 2nd day of October, 2013.


                                          /s/Charles S. Coody
                                    CHARLES S. COODY
                                    UNITED STATES MAGISTRATE JUDGE